**STEPTOE & JOHNSON LLP**
Charles Michael (NY Bar No. 4198412) (forthcoming *pro hac vice*)
*cmichael@steptoe.com*
1114 Avenue of the Americas
New York, NY 10036
(212) 506 3900 main

Galen Kast (DC Bar No. 1034774) (forthcoming *pro hac vice*)
*gkast@steptoe.com*
1330 Connecticut Avenue, NW
Washington, DC 200366
(202) 429 3000 main

Amanda Schwartz (CA Bar No. 307522)
*rcrowther@steptoe.com*
*aschwartz@steptoe.com*
One Market Plaza, Steuart Tower, Suite 1070

Attorneys for Plaintiff Cerebellum Networks, Inc.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CEREBELLUM NETWORKS, INC., <br><br> Plaintiff, <br><br> vs. <br><br> KENZI WANG, and DOES 1-10, <br><br> Defendants. | Civil Action No.:  3:23-cv-2444 <br><br> **PLAINTIFF CEREBELLUM NETWORKS, INC. COMPLAINT FOR DAMAGES AND INJUNCTIVE, AND DECLARATORY RELIEF** <br><br> (1) Civil Theft <br> (2) Conversion of Cere Funds <br> (3) Unjust Enrichment <br> (4) Intentional Interference with Contractual Relations for Diversion of Cere Funds <br> (5) Intentional Interference with Prospective Economic Relations for Diversion of Cere Funds <br> (6) Unfair Competition for Diversion of Cere Funds <br> (7) Breach of Contract for Conversion of Cere's Social Media Accounts <br> (8) Breach of Fiduciary Duty as an Advisor to Cere <br> (9) Conversion of Cere's Social Media Accounts |

COMPLAINT FOR DAMAGES, INJUNCTIVE, AND DECLARATORY RELIEF

(10) Intentional Interference with Contractual Relations for Conversion of Cere's Social Media Accounts
(11) Intentional Interference with Prospective Economic Relations for Conversion of Cere's Social Media Accounts
(12) Unfair Competition for Conversion of Cere's Social Media Accounts
(13) Misappropriation of Trade Secrets
(14) Injunctive Relief

**DEMAND FOR JURY TRIAL**

## I.    COMPLAINT

1.      Plaintiff Cerebellum Networks, Inc., ("Plaintiff," "Cere," or the "Company"), through undersigned counsel, hereby file this Complaint for their claim against Defendants Kenzi Wang and Does 1–10, and allege as follows:

## II.    NATURE OF ACTION

2.      Cere, a crypto token business, recently terminated Kenzi Wang as an advisor and independent contractor when it discovered that Mr. Wang stole approximately $1,357,400 in Company funds and deleted Company files to cover his tracks.  Making matters worse, Mr. Wang has hijacked Cere's social media accounts, despite his termination, and despite repeated demands that he relinquish them. This action seeks to recover the stolen funds and accounts and to otherwise hold Mr. Wang accountable for his egregious wrongdoing.

3.      Cere is a company that developed a decentralized, blockchain-based data cloud protocol for content producers, game developers, consumer brands and others to accelerate their applications into "Web3," the next generation of internet service built on blockchain technology.

4.      Customers and other third parties interested in Cere can purchase Cere tokens, a blockchain-based token native to the Cere network that can be used, among other things, to facilitate smart contracts on the blockchain or participate in certain rewards programs.

COMPLAINT FOR DAMAGES, INJUNCTIVE, AND DECLARATORY RELIEF

5.      Like other blockchain-based tokens, Cere tokens are stored in electronic "wallets" on the blockchain.

6.      Mr. Wang was an advisor retained by Cere on an independent contractor basis to assist with fundraising, marketing, token listings and other business development projects for the benefit of the Cere.

7.      One component of Mr. Wang's work for Cere was to market Cere tokens to potential buyers.

8.      Cere recently discovered that Mr. Wang commonly directed Cere token purchasers to pay for their Cere tokens via fund transfers to wallets that Mr. Wang personally owned and controlled.  Despite repeated requests to return the funds, Mr. Wang has refused.  Mr. Wang has made investigating the extent of his wrongdoing all the more difficult because he revoked the Company's access to a "tracking" spreadsheet of token purchases, clearly for the purposes of covering up his behavior.

9.      If theft of Company funds were not enough, Mr. Wang has hijacked Cere's online social media accounts, including accounts on Twitter and Telegram, and blocked rightful access to those accounts by Cere and its employees.  Despite numerous requests to relinquish control of the accounts and return rightful access to Cere, Mr. Wang has refused, and continues to refuse, to turn over the access credentials, causing substantial harm to Cere.

### III.     PARTIES

10.     Plaintiff Cerebellum Networks, Inc. is a Delaware corporation with its principal place of business in Berlin, Germany.

11.     Mr. Wang is an individual and, on information and belief, resides in Dubai, United Arab Emirates.

12.     Except as described herein, Cere is ignorant of the true names of Defendants sued as Does 1 through 10, inclusive, and therefore sues these Defendants by such fictitious names.  Following further investigation and discovery, Cere will seek leave of the Court to amend the complaint to allege their true names and capacities when ascertained.  These

COMPLAINT FOR DAMAGES, INJUNCTIVE, AND DECLARATORY RELIEF

fictitiously named Defendants are individuals and/or entities who were involved in the wrongdoing detailed herein. These Doe Defendants 1-10 aided and abetted and/or conspired with the named Mr. Wang in the wrong acts and course of conduct or otherwise caused the damages and injuries claimed herein and are responsible in some manner for the acts, occurrences, and events alleged herein.

13.     Kenzi Wang and the Doe Defendants aided and abetted and/or conspired with the other Defendants in the wrongful acts, omissions, and course of conduct alleged herein or otherwise caused the damages and injuries claimed herein and are jointly and severally liable for the wrongful acts, omissions, and injuries alleged herein.

## IV.     JURISDICTION & VENUE

14.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1) as the amount in controversy exceeds $75,000 and the case is brought by Cere, a company incorporated in Delaware with its principal place of business in Germany, against Mr. Wang who is a citizen of Dubai, United Arab Emirates and other unidentified defendants who are believed to be residents of a U.S. state. Thus, complete diversity exists.

15.     Venue is appropriate in this judicial district under 28 U.S.C. § 1391(b)(2) because the agreement at issue was entered into in this judicial district, and because a substantial part of the events or omissions giving rise to the claim occurred in this judicial district. Additionally, Cere and Mr. Wang entered into the agreement at issue (the "Term Sheet"), attached hereto as **Exhibit 1**, which states in part the following:

> The Parties agree to first negotiate in good faith to settle their differences, if any. If unsuccessful, the Parties agree to submit to the exclusive jurisdiction of federal and state courts located in San Francisco, California, for the purpose of any suit, action or other proceeding arising out of or relating to [the Term Sheet].

16.     Consistent with the Term Sheet, Cere has made a good faith effort to negotiate with Mr. Wang to settle their differences, including, without limitation, through letters sent to Mr. Wang on April 22, 2023 and May 1, 2023, and emails and telephone

exchanges between April 22, 2023 and May 11, 2023.  Despite these good faith efforts by Cere, Cere and Mr. Wang have not been able to settle their differences.

17.     This Court further has personal jurisdiction over Defendants because a substantial part of the events giving rise to the allegations contained in this Complaint occurred in California, and because the acts alleged in this Complaint were directed at California.

## V.     FACTUAL BACKGROUND

18.     Cere was created on or around January 2, 2019.

19.     Cere is, and at all time relevant hereto was, a company that developed a decentralized data cloud protocol for content producers, game developers, Web3 companies and consumer brands, and other individuals and entities to accelerate their applications into Web3 by leveraging the decentralized data cloud through ready-to-use Cere Tools and Services.

20.     On September 7, 2022, Mr. Wang signed an agreement (the "Term Sheet") with Cere, attached here as **Exhibit 1**.  Pursuant to paragraph 4 of the Term Sheet, Mr. Wang was retained by Cere as an advisor on an independent contractor basis.  Paragraph 4 of the Term Sheet defined Mr. Wang's duties as the following:

> 1)     Wang shall use his best efforts to assist with fundraising, marketing, token listings and other business development projects for the benefit of the Company.
>
> 2)     Wang shall not have any involvement in the operations side of the Company and shall limit his involvement to business development projects as requested by the Company.
>
> 3)     Wang shall advise third parties to transfer any investments or other funds of any kind directly to the Company or the Foundation, and shall assist the Company or the Foundation in collecting any appropriate paperwork or other information that may be required on such financial transactions.

COMPLAINT FOR DAMAGES, INJUNCTIVE, AND DECLARATORY RELIEF

4)      Wang shall not compete with the Company or the Foundation with similar decentralized data cloud products, or disparage them or their respective officers, directors or employees. Meanwhile, Jin shall not disparage Wang for any reason.

5)      Wang shall not solicit or induce the resignation of persons who work for the Company or the Foundation, or engage in any other conduct that disrupts or interferes with the operation of the Company, and will refrain from making any demands, threats, or disparaging statements directed to the Company, the Foundation or their directors, officers, employees, contractors, or other agents or representatives. Meanwhile, [Cere principal] Jin will refrain from making any demands, threats or disparaging statements about Wang to anyone.

21.     Paragraph seven of the Term Sheet, which governs proprietary information and intellectual property, states the following:

The Company shall own all proprietary information and intellectual property conceived by Wang in connection with his services.  Wang agrees that all inventions and all other business, technical, and financial information (including customer information) Wang develops, learns or obtains in connection with his services or that are received by or for Company in confidence, constitute proprietary information, which shall be held in confidence.  This agreement is also confidential.

22.     Paragraph eight of the Term Sheet, which governs dispute resolution, states the following:

The Parties agree to first negotiate in good faith to settle their differences, if any.  If unsuccessful, the Parties agree to submit to the exclusive jurisdiction of federal and state courts located in San

Francisco, California, for the purpose of any suit, action, or other proceeding arising out of or relating to this Agreement. The parties agree that the losing Party will cover the prevailing Party's reasonable fees and costs of the legal proceedings.

23.     Paragraph eleven of the Term Sheet further states that the Term Sheet "shall be interpreted, enforced and governed by and under the laws of the State of California, without regard to any conflict of law principles."

**A.     Mr. Wang's Unlawful Retention of Cere Funds**

24.     Between 2020 and 2021, Mr. Wang assisted Cere by facilitating the sale of Cere tokens.

25.     Mr. Wang sold Cere tokens for Cere's benefit via simple agreements for future tokens, or SAFTs. These SAFTs were later superseded token purchaser agreements, or TPAs, which served the same purpose. SAFTs and TPAs are contractual agreements that define the terms of such token sales to token purchasers.

26.     Mr. Wang executed each SAFT and/or TPA with prospective token purchasers via DocuSign. DocuSign is a software platform that allows organizations such as Cere to manage and execute electronic agreements.

27.     Rather than instructing token purchasers to transmit payment to wallets owned and controlled by Cere, Mr. Wang instructed token purchasers to transmit payment to wallets owned and controlled by Mr. Wang.

28.     In an apparent effort to hide the fact that the token sale proceeds were being transferred to wallets owned and controlled by Mr. Wang, Mr. Wang failed to properly record such token sales in Cere's internal ledger. Mr. Wang instead tracked such sales via a separate document controlled by Mr. Wang (the "Token Sale Tracker"), which inhibited Cere's ability to detect Mr. Wang's malfeasance.

29.     On September 7, 2022, Mr. Wang signed the Term Sheet with Cere, attached here as **Exhibit 1**.

COMPLAINT FOR DAMAGES, INJUNCTIVE, AND DECLARATORY RELIEF

30.     Paragraph 4 of the Term Sheet defined Mr. Wang's duties as an "advisor on an independent contractor basis."

31.     Paragraph 4 further states, "Wang shall advise third parties to transfer any investments or other funds of any kind directly to the Company or the Foundation, and shall assist the Company or the Foundation in collecting any appropriate paperwork or other information that may be required on such financial transactions."

32.     On April 8, 2023, a token purchaser contacted Cere with a question related to their purchase of Cere tokens.  Cere promptly requested that the token purchaser provide all relevant information relating to their purchase of Cere tokens.

33.     To Cere's shock and dismay, upon receipt of the token purchaser's DocuSign email receipt, Cere discovered that the token purchaser had not been directed to transmit payment to a Cere controlled wallet or a wallet known and tracked by Cere.  Instead, Mr. Wang had directed the token purchaser to transmit payment to an unknown wallet address, and improperly retained those funds for himself instead of transferring the funds to Cere or using the funds for a purpose known and approved by Cere.

34.     Upon further research, Cere discovered dozens of similar theretofore unknown wallets that contained funds transmitted from wallets controlled by Cere token purchasers, and exactly matching the proceeds from the Cere token sales facilitated by Mr. Wang.  On information and belief, these additional unknown wallets are controlled by Mr. Wang, and contain funds Mr. Wang improperly withheld from Cere.

35.     This research led Cere to a shocking realization: Mr. Wang had improperly kept a massive amount of Cere token sale proceeds for himself, rather than promptly forwarding all proceeds to Cere or using such proceeds for a purpose known and approved by Cere.

36.     Cere further discovered that Mr. Wang, at an unknown date prior to April 8, 2023, had revoked Cere's access to the Token Sale Tracker, thus significantly impeding Cere's ability to trace the funds withheld by Mr. Wang.

COMPLAINT FOR DAMAGES, INJUNCTIVE, AND DECLARATORY RELIEF

37.     Mr. Wang has collected substantial funds from token purchasers that quite obviously belong to Cere but that he has refused to return.  On information and belief, this includes approximately $1,357,400 across forty-six transactions that remain in wallets controlled by Mr. Wang, in addition to other as yet unidentified funds improperly retained by Mr. Wang (the "Diverted Funds").  The Diverted Funds are clearly Company funds, yet Mr. Wang has wrongly kept them.

38.     Following discovery of Mr. Wang's improper retention of the Diverted Funds, Cere repeatedly demanded that Mr. Wang return all such funds.  Mr. Wang has refused, and continues to refuse, to do so.

### B.     Mr. Wang's Conversion of Cere Social Media Accounts

39.     Cere's website attracts approximately 15,000 visitors each month, Cere's Twitter account has approximately 105,000 followers, and Cere's Community Chat Telegram account has approximately 23,000 members.

40.     Cere's sole source of revenue is generated from first and third-party integrations of Cere technology, whereas Cere automatically receives a percentage from every transaction processed on these platforms.

41.     Cere uses a variety of social media platforms, including Twitter, Telegram, Discord, Reddit, Facebook, and Instagram, to connect with current and prospective customers and token purchasers, and to engage with the larger community of content producers, game developers, and consumer brands.

42.     Cere further uses its Twitter account to communicate with its community and share important updates and news about the project.  This includes sharing announcements about product releases, partnerships, events, and any other developments related to the Cere Network.  Additionally, Cere uses its Twitter account to engage with its followers, answer questions, and provide support when needed.  By using Twitter in this way, Cere is able to maintain an open and transparent dialogue with its community, which is crucial for building trust and fostering long-term relationships. Whereas consistency in posting updates on Twitter is crucial for blockchain projects, every day

that passes by without updates harms Cere's reputation. Furthermore, the lack of access to Twitter restricts collaborating with third parties on marketing campaigns, making Cere look unprofessional and unreliable.

43.    Cere further uses its Telegram account to engage with its community, answer questions, and provide support when needed. Unlike Twitter, Telegram offers a more interactive and real-time communication experience, which allows Cere to have more in-depth conversations with its community members. In the Telegram Community chat, Cere team members and moderators actively participate in discussions, share project updates, and provide insights into the Cere Network ecosystem. Additionally, the community chat serves as a platform for Cere to gather feedback and insights from its community members, which helps the team better understand its users' needs and preferences. Furthermore, Cere uses its Telegram Community chat to organize events and Ask-Me-Anything ("AMA") sessions where community members can directly interact with the team and learn more about the project. This level of engagement and transparency has helped Cere to build a strong community of supporters who are invested in the success of the project.

44.    There are many details of Cere's relationships with its current and prospective customers and token purchasers, Twitter followers, and Telegram page members that are not generally known or readily accessible to the public or to Cere's competitors. Cere derives independent economic benefit from this information, which it has developed through years of substantial time, effort, expense, research, and communication with its users.

45.    Cere has taken and continues to take reasonable efforts to maintain the secrecy of this propriety information, including restricting access to, and distribution of, this confidential information only to agents of Cere who need this information to perform services for Cere.

46.    This confidential information includes, but is not limited to, the passwords to Cere's Twitter and Telegram accounts, and all account data for the same, including direct

COMPLAINT FOR DAMAGES, INJUNCTIVE, AND DECLARATORY RELIEF

messages and other account statistics and data (collectively, the "Confidential Information").

47.     The Confidential Information is not generally known or readily accessible, and is maintained in confidence by Cere, with limited access provided to agents of Cere on a need-to-know basis.  Cere has at all times taken reasonable steps to protect such Confidential Information from being stolen or misused.  The Confidential Information would be of substantial value to Cere's competitors if it became known to them.

48.     As an agent of Cere, Mr. Wang was given use of Cere's Twitter account and Telegram channel (the "Accounts").  Mr. Wang accessed the Accounts using Cere's Confidential Information, and used the Accounts to disseminate information and promote Cere's services on behalf of Cere.

49.     On or about December 22, 2022, Cere discovered that Mr. Wang had changed the password to Cere's Twitter account.  This was discovered by an employee of Cere who wanted to post a Tweet pursuant to Cere's marketing timeline, but who received an unexpected "wrong password" notification.  Following notification by the employee who discovered the issue, Cere Principal Martijn Broersma reached out to Mr. Wang immediately via Telegram to reset the Twitter account's password via Mr. Wang's Cere email address, which was tied to the Cere's Twitter account.  After two days, Martijn Broersma received the new password, created by Mr. Wang, after which the password was added by Martijn Broersma to password vault tool Bitwarden.  Bitwarden is used by Cere to manage account access rights and information.  Cere was surprised and dismayed by this unwarranted action by Mr. Wang.

50.     On or about March 22, 2023, Cere discovered that Mr. Wang had changed the password to Cere's Twitter account a second time, without notification to Cere's employees or an update to Cere's Bitwarden password manager.  From this point on only Cere's head of Marketing was given limited access by Mr. Wang to the Cere's Twitter account through the tool Hootsuite.  Hootsuite is a third-party tool that permits Twitter

COMPLAINT FOR DAMAGES, INJUNCTIVE, AND DECLARATORY RELIEF

users, including Cere, to schedule and post Tweets without logging into Twitter via the Twitter API.

51.     On March 28, 2023, Cere discovered that Cere principals Fred Jin and Martijn Broersma, who until that date were administrators of the Cere's Telegram channel, were no longer administrators.  Only Mr. Wang can remove other channel administrators due to his status of channel "owner," following the creation of the Telegram channel by Mr. Wang on Cere's behalf, and for the benefit of Cere.

52.     On April 18, 2023, Cere discovered that Mr. Wang had removed Hootsuite authorization for Cere's Twitter account, effectively cutting off Cere from its main communication channel completely.

53.     On April 22, 2023, Cere emailed a letter to Mr. Wang terminating Mr. Wang from all roles with Cere, and demanding, among other things, that Mr. Wang return all Cere property, including access credentials for all social media accounts.  Mr. Wang ignored Cere's requests and did not return to Cere Cere's rightful access to its Twitter and Telegram accounts or the access credentials thereto.

54.     On April 26, 2023, Cere discovered that Mr. Wang had provided administrative access to Cere's Telegram to two additional individuals, who, on information and belief, are unaffiliated with Cere.  Despite providing access to these two additional individuals, Mr. Wang did not provide access to Cere or its principals.

55.     The misappropriation of the Twitter account by Mr. Wang has not only disrupted Cere's Twitter communication channel, but has also impacted Cere's Telegram Community chat.  As a result, Cere has been unable to engage with its community members in the same way, which has led to a loss of trust and confidence in the project, with stakeholders increasingly reaching out in other Cere-related Telegram groups and direct messages to Cere employees.

56.     On information and belief, Mr. Wang has used Cere's Confidential Information to access the Accounts, without Cere's permission, causing substantial harm to Cere.  At

COMPLAINT FOR DAMAGES, INJUNCTIVE, AND DECLARATORY RELIEF

this time because Cere does not have access to the Twitter and Telegram accounts, it does not know the extent to which Mr. Wang is using the Accounts.

## VI.   CAUSES OF ACTION

### FIRST CAUSE OF ACTION

#### (Civil Theft)

#### (Against All Defendants)

57.   Cere repeats and realleges each allegation above and below as if set forth herein.

58.   Based on Cere's information and belief, as early as 2020, Cere was the rightful owner of and had the right to the proceeds of the sale of Cere tokens.

59.   Mr. Wang sold Cere tokens for Cere's benefit via simple agreements for future tokens, or SAFTs.  These SAFTs were later superseded token purchaser agreements, or TPAs, which served the same purpose.

60.   Mr. Wang executed each SAFT and/or TPA with prospective token purchasers via DocuSign.

61.   Rather than instructing token purchasers to transmit payment to wallets owned and controlled by Cere, Mr. Wang instructed token purchasers to transmit payment to wallets owned and controlled by Mr. Wang.

62.   Unbeknownst to Cere, Mr. Wang kept a portion of the token sale proceeds for himself totaling approximately $1,357,400, rather than transferring such proceeds to Cere or using them in a manner known and approved by Cere.

63.   On information and belief, Mr. Wang used these Diverted Funds for his personal benefit.

64.   Mr. Wang knowingly and designedly, by false and/or fraudulent representation or pretense, defrauded Cere of approximately $1,357,400 in proceeds from the sale of Cere tokens.

65.   Mr. Wang knowingly and intentionally assumed control over Diverted Funds and feloniously stole, took, misappropriated, and drove away such proceeds.

COMPLAINT FOR DAMAGES, INJUNCTIVE, AND DECLARATORY RELIEF

66.     Mr. Wang knowingly and intentionally deprived Cere of approximately $1,357,400 when he refused without justification to return the Diverted Funds to Cere.

67.     Mr. Wang also deprived Cere of the benefit of possessing the Diverted Funds because he misappropriated, commingled, or misapplied such distributions by:

    a.     Misappropriating proceeds from the sale of Cere tokens;

    b.     Withholding proceeds from the sale of Cere tokens;

    c.     Embezzling such proceeds owed to Cere.

68.     Mr. Wang's theft of Cere's property was controlled and directed by the actions and decisions of Mr. Wang and Does 1–10.  Mr. Wang not only had full knowledge of the wrongful withholding of Cere's property, but also was the primary participant in creating Mr. Wang's false claim to that property.  Mr. Wang is benefitting personally from the theft of Cere's proceeds.

69.     By preventing Cere from possessing the Diverted Funds, Mr. Wang wrongfully and intentionally stole and took away Cere's proceeds, and he received and withheld from Cere that stolen property, in violation of California Penal Code Sections 484 and 496.

70.     As a direct and proximate result of Mr. Wang's theft of the Diverted Funds, which were for the benefit of Cere, Cere has and will continue to suffer damages.

71.     As a result of Mr. Wang's civil theft, Cere has suffered damages in an amount to be determined at trial, including but not limited to the value of the Diverted Funds.

72.     Cere is further entitled to treble damages under California Penal Code Section 496(c) as an injured party from the civil theft committed by Mr. Wang.

## SECOND CAUSE OF ACTION

### (Conversion of Cere Funds)

### (Against All Defendants)

73.     Cere repeats and realleges each allegation above and below as if set forth herein.

74.     At all times relevant herein, Cere owned, possessed, and/or had a right to possess, and still owns and/or has a right to possess any and all profits derived directly or indirectly from Mr. Wang's sale of Cere tokens on behalf of Cere.

COMPLAINT FOR DAMAGES, INJUNCTIVE, AND DECLARATORY RELIEF

75.     Mr. Wang intentionally, wrongfully, and substantially converted the Diverted Funds for his own use, personal benefit, and gain by wrongfully taking possession of the Diverted Funds and preventing Cere from having access to the same.

76.     Cere did not consent to Mr. Wang's conversion of the Diverted Funds.

77.     Cere has demanded the immediate return of the Diverted Funds, but Mr. Wang failed and refused, and continues to fail and refuse, to return the property to Cere.

78.     Mr. Wang's actions harmed Cere by wrongfully converting from Cere approximately $1,357,400 in Cere token sale proceeds that rightfully belong to Cere.

79.     Mr. Wang's conversion of the Diverted Funds was a substantial factor in causing Cere's harm.

80.     Mr. Wang's acts were willful, wanton, malicious, oppressive, and done with reckless disregard of the rights of Cere, and thereby entitle Cere to an award of exemplary damages in an amount to be determined at trial.

### THIRD CAUSE OF ACTION

### (Unjust Enrichment)

### (Against All Defendants)

81.     Cere repeats and realleges each allegation above and below as if set forth herein.

82.     Between 2020 and 2021, Mr. Wang assisted Cere by facilitating the sale of Cere tokens.

83.     Mr. Wang unjustly enriched himself by keeping the Diverted Funds for himself, rather than transferring them to Cere or using them for a purpose known and approved by Cere.

84.     Mr. Wang knowingly received and benefitted from this diversion of funds, which is the unjust retention of a benefit to the loss of Cere.

85.     There is no justification for Mr. Wang to have received, and continue to have possession of, these proceeds.

86.     As a direct and proximate result of Mr. Wang's unjust enrichment at Cere's expense, Cere has suffered and will continue to suffer damages.

**FOURTH CAUSE OF ACTION**

**(Intentional Interference with Contractual Relations for Diversion of Cere Funds)**

**(Against All Defendants)**

87.     Cere repeats and realleges each allegation above and below as if set forth herein.

88.     Cere entered into contractual agreements with its token purchasers for the sale of Cere tokens in exchange for consideration.

89.     Mr. Wang knew of these contracts.

90.     Mr. Wang intended to and did disrupt these contractual relationships by keeping for himself the Diverted Funds and refusing to give Cere access to the same.

91.     Mr. Wang's conversion of the Diverted Funds harmed Cere by preventing and significantly impairing its ability to run its business.

92.     Mr. Wang's actions have also impaired and/or precluded Cere's ability to conduct business.

93.     Mr. Wang's tortious interference was a substantial factor in causing Cere harm.

**FIFTH CAUSE OF ACTION**

**(Intentional Interference with Prospective Economic Relations for Diversion of Cere Funds)**

**(Against All Defendants)**

94.     Cere repeats and realleges each allegation above and below as if set forth herein.

95.     Cere is in an economic relationship with its token purchasers, through which token purchasers purchased Cere tokens in exchange for consideration.  These relationships were likely to bring an economic benefit to Cere as Cere sold Cere tokens for consideration.

96.     Mr. Wang knew of these relationships.

97.     Mr. Wang intended to and did disrupt these economic relationships by keeping for himself the Diverted Funds and refusing to give Cere access to the same.

98.     Mr. Wang's conversion of the Diverted Funds harmed Cere by preventing and significantly impairing its ability to run its business.

COMPLAINT FOR DAMAGES, INJUNCTIVE, AND DECLARATORY RELIEF

99.     Mr. Wang's actions have also impaired and/or precluded Cere's ability to conduct business.

100.     Mr. Wang's tortious interference was a substantial factor in causing Cere harm .

## SIXTH CAUSE OF ACTION

### (Unfair Competition for Diversion of Cere Funds, Cal. Bus. & Prof. Code § 17200)

### (Against All Defendants)

101.     Cere repeats and realleges each allegation above and below as if set forth herein.

102.     Section 17200 of California's Business & Professions Code ("UCL") prohibits any "unlawful," "fraudulent," and "unfair" business practices.

103.     Mr. Wang has violated the UCL by, among other things, misappropriating the Diverted Funds, while preventing Cere's access to the same without Cere's consent.

104.     By these actions, Mr. Wang has engaged in unfair competition in violation of the laws of the State of California, and as a result, Cere has suffered and will continue to suffer damage to its business, reputation, and goodwill.

105.     As a direct and proximate cause of Mr. Wang's willful and intentional actions, Cere has suffered damages in an amount to be determined at trial and, unless Defendants are restrained, Cere will continue to suffer irreparable damage.

106.     Cere is further entitled to interest and to its attorney's fees and costs incurred in bringing this action, all in an amount to be proven at the time of trial.

## SEVENTH CAUSE OF ACTION

### (Breach of Contract for Conversion of Cere's Social Media Accounts)

### (Against All Defendants)

107.     Cere repeats and realleges each allegation above and below as if set forth herein.

108.     On September 7, 2022, Cere and Mr. Wang entered into an agreement (the "Term Sheet"), attached hereto as **Exhibit 1**.

109.     Cere has at all times performed all terms of the Term Sheet.

110.     Paragraph 4 of the Term Sheet defined Mr. Wang's duties as an "advisor on an independent contractor basis."

COMPLAINT FOR DAMAGES, INJUNCTIVE, AND DECLARATORY RELIEF

111.   Paragraph 4 of the Term Sheet further circumscribed Mr. Wang's involvement with Cere, stating, "Wang shall not have any involvement in the operations side of the Company and shall limit his involvement to business development projects as requested by the Company.

112.   Paragraph 7 of the Term Sheet further states:

> The Company shall own all proprietary information and intellectual property conceived by Wang in connection with his services. Wang agrees that all inventions and all other business, technical, and financial information (including customer information) Wang develops, learns or obtains in connection with his services or that are received by or for [Cere] in confidence, constitute proprietary information, which shall be held in confidence. This agreement is also confidential.

113.   Mr. Wang breached the Term Sheet by misappropriating Cere's Twitter and Telegram accounts in violation of Paragraph 4 of the Term Sheet, which prohibits Mr. Wang's involvement in the operations side of Cere, including the managing of its social media accounts.

114.   Mr. Wang further breached the Term Sheet by converting Cere's Twitter and Telegram accounts, and by providing administrative access to Cere's Telegram account to individuals unaffiliated with Cere, without Cere's permission, all in violation of Paragraph 7 of the Term Sheet.

115.   Mr. Wang further breached the Term Sheet insofar as he was supposed to "report[] directly to the CEO" and only undertake projects "as requested by the Company." Mr. Wang was instructed by the CEO and the Company to return the Twitter and Telegram accounts but refused to do so.

116.   Cere has been harmed by Mr. Wang's breaches of the Term Sheet.

## **EIGHTH CAUSE OF ACTION**

### **(Breach of Fiduciary Duty as an Advisor to Cere)**

COMPLAINT FOR DAMAGES, INJUNCTIVE, AND DECLARATORY RELIEF

**(Against All Defendants)**

117.    Cere repeats and realleges each allegation above and below as if set forth herein.

118.    From September 7, 2022 to April 22, 2023, Mr. Wang was an advisor to Cere.  As an advisor to Cere, Mr. Wang owed and continues to owe fiduciary duties to Cere, including, but not limited to, the duties of loyalty and care.

119.    Mr. Wang also owes continuing duties, including fiduciary duties, by virtue of the trust and confidence previously reposed in him by Cere, including, without limitation, his role as an advisor to Cere.

120.    Cere reasonably relied on the fiduciary relationship in permitting Mr. Wang to have access to Cere's Twitter and Telegram accounts.

121.    Mr. Wang nonetheless breached his fiduciary duty owed to Cere by engaging in acts adverse to Cere's interest, including, without limitation, retaining and refusing to relinquish to Cere, to Cere's detriment and for Mr. Wang's benefit, access to Cere's Twitter and Telegram accounts.

122.    As a direct result of Mr. Wang's conflict of interest, disloyalty, and dishonest acts, Mr. Wang's breaches of fiduciary duty have proximately caused damage to Cere in an amount to be proven at trial.

123.    Mr. Wang engaged in the foregoing conduct with oppression, fraud or malice, and acted wantonly, willfully and with reckless disregard of the rights of Cere, thereby entitling Cere to an award of exemplary damages in an amount to be determined at trial.

## NINTH CAUSE OF ACTION

### (Conversion of Cere's Social Media Accounts)

### (Against All Defendants)

124.    Cere repeats and realleges each allegation above and below as if set forth herein.

125.    At all times relevant herein, Cere owned, possessed, and/or had a right to possess, and still owns and/or has a right to possess any and all of its intangible property and profits derived directly or indirectly therefrom, including, without limitation, Cere's Twitter and Telegram accounts.

COMPLAINT FOR DAMAGES, INJUNCTIVE, AND DECLARATORY RELIEF

126.    As described above, Cere entrusted Mr. Wang with the possession and use of these items of personal property for Cere's exclusive benefit.

127.    Mr. Wang intentionally, wrongfully, and substantially converted the above personal property for his own use and for his personal benefit and gain by taking possession of Cere's personal property and preventing Cere from having access to the same.

128.    Cere did not consent to Mr. Wang's conversion of its Twitter and Telegram accounts.

129.    Cere has demanded the immediate return of the above-mentioned property but Mr. Wang failed and refused, and continues to fail and refuse, to return the property to Cere.

130.    Mr. Wang's actions harmed Cere by significantly impairing Cere's ability to communicate with and transmit legal and other important documents to its customers, prospective customers, token purchasers, and prospective token purchasers, who together are Cere's primary source of funds.

131.    Mr. Wang's conversion of Cere's Twitter and Telegram accounts was a substantial factor in causing Cere's harm.

132.    Mr. Wang's acts were willful, wanton, malicious, oppressive, and done with reckless disregard of the rights of Cere, thereby entitled Cere to an award of exemplary damages in an amount to be determined at trial.

## TENTH CAUSE OF ACTION

**(Intentional Interference with Contractual Relations for Conversion of Cere's Social Media Accounts)**

**(Against All Defendants)**

133.    Cere repeats and realleges each allegation above and below as if set forth herein.

134.    Cere entered into contractual agreements with its customers, allowing such customers to access Cere and its functionality.   Cere further entered into contractual

COMPLAINT FOR DAMAGES, INJUNCTIVE, AND DECLARATORY RELIEF

agreements with its token purchasers, allowing such token purchasers to purchase Cere tokens in exchange for consideration.

135.   Mr. Wang knew of these contracts.

136.   Mr. Wang intended to and did disrupt these contractual relationships by seizing control of Cere's Twitter and Telegram accounts, by blocking Cere from accessing all such accounts, and by refusing to give Cere access to these accounts.

137.   Mr. Wang's conversion of Cere's Twitter and Telegram accounts harmed Cere by preventing and significantly impairing its ability to communicate with and transmit legal and other important documents to its customers, prospective customers, token purchasers, and prospective token purchasers, who together are Cere's primary source of funds.

138.   Mr. Wang's actions have also impaired and/or precluded Cere's ability conduct business.

139.   Mr. Wang's tortious interference was a substantial factor in causing Cere harm.

### ELEVENTH CAUSE OF ACTION

### (Intentional Interference with Prospective Economic Relations for Conversion of Cere's Social Media Accounts)

### (Against All Defendants)

140.   Cere repeats and realleges each allegation above and below as if set forth herein.

141.   Cere was in an economic relationship with its customers, allowing such customers to access Cere and its functionality.  Cere was further in an economic relationship with its token purchasers, allowing such token purchasers to purchase Cere tokens in exchange for consideration.  These relationships were likely to bring an economic benefit to Cere as Cere monetized Cere in the future and sought outside investment based on Cere's growth.

142.   Mr. Wang knew of these relationships.

143.   Mr. Wang intended to and did disrupt these economic relationships by seizing control of Cere's Twitter and Telegram accounts, and by blocking Cere from accessing all such accounts.

COMPLAINT FOR DAMAGES, INJUNCTIVE, AND DECLARATORY RELIEF

144.     Mr. Wang's conversion of Cere's Twitter and Telegram accounts disrupted the relationships between Cere and its customers, significantly impairing Cere's ability to communicate with and transmit documents to its customers, token purchasers, prospective customers, and prospective token purchasers.

145.     Mr. Wang's actions further harmed Cere by significantly impairing Cere's ability to communicate with and transmit legal and other important documents to its customers, prospective customers, token purchasers, and prospective token purchasers, who together are Cere's primary source of funds.

146.     Mr. Wang's actions have also impaired and/or precluded Cere's ability conduct business.

147.     Mr. Wang's tortious interference was a substantial factor in causing Cere's harm.

**TWELTH CAUSE OF ACTION**

**(Unfair Competition for Conversion of Cere's Social Media Accounts, Cal. Bus. & Prof. Code § 17200)**

**(Against All Defendants)**

148.     Cere repeats and realleges each allegation above and below as if set forth herein.

149.     Section 17200 of California's Business & Professions Code ("UCL") prohibits any "unlawful," "fraudulent," and "unfair" business practices.

150.     Mr. Wang has violated the UCL by, among other things, misappropriating Cere's Twitter and Telegram accounts, while preventing Cere's access to the same without Cere's consent.

151.     By these actions, Mr. Wang has engaged in unfair competition in violation of the laws of the State of California, and as a result, Cere has suffered and will continue to suffer damage to its business, reputation, and goodwill.

152.     As a direct and proximate cause of Mr. Wang's willful and intentional actions, Cere has suffered damages in an amount to be determined at trial and, unless Defendants are restrained, Cere will continue to suffer irreparable damage.

COMPLAINT FOR DAMAGES, INJUNCTIVE, AND DECLARATORY RELIEF

1   153.   Cere is further entitled to interest and to its attorney's fees and costs incurred in
2   bringing this action, all in an amount to be proven at the time of trial.

3   **THIRTEENTH CAUSE OF ACTION**

4   **(Misappropriation of Trade Secrets, 18 U.SC. § 1836 and Cal. Civ. Code §§ 3426 *et seq.*)**

5   **(Against All Defendants)**

6   154.   Cere repeats and realleges each allegation above and below as if set forth herein.

7   155.   Cere's usernames and/or passwords, and any confidential business information
8   available on the Twitter and Telegram accounts are all trade secrets (the "Trade Secrets").

9   156.   Cere derives independent economic value, actual or potential, from the Trade
10   Secrets not being known to the general public or to other persons, like third parties, who
11   can obtain economic value from the disclosure or use of the Trade Secrets.

12   157.   The Trade Secrets are subject to efforts by Cere that are reasonable to maintain
13   their secrecy.

14   158.   Cere is the owner of the Trade Secrets.

15   159.   Cere was harmed, and Mr. Wang was unjustly enriched by his misappropriation
16   of the Trade Secrets.

17   160.   Mr. Wang's acquisition or disclosure of the Trade Secrets were a substantial factor
18   in causing Cere harm and/or Mr. Wang's unjust enrichment.

19   161.   Mr. Wang acquired the Trade Secrets and knew or had reason to know that the
20   Trade Secrets were acquired by improper means.

21   162.   Mr. Wang used the Trade Secrets without express or implied consent from Cere.

22   163.   Mr. Wang knew or had reason to know that his knowledge of the Trade Secrets
23   was acquired under circumstances giving rise to a duty to maintain its secrecy given his
24   role at Cere.

25   **FOURTEENTH CAUSE OF ACTION**

26   **(Injunctive Relief)**

27   **(Against All Defendants)**

28   164.   Cere repeats and realleges each allegation above and below as if set forth herein.

COMPLAINT FOR DAMAGES, INJUNCTIVE, AND DECLARATORY RELIEF

165.    Cere alleges that, unless enjoined by order of the Court, Mr. Wang will not provide Cere with access and/or control of the wallets with the approximately $1,357,400 of proceeds of Cere token sales.  No adequate remedy at law exists for the injuries alleged herein, and Cere will suffer great and irreparable injury if Mr. Wang's conduct is not immediately enjoined and restrained.

166.    Cere further alleges that, unless enjoined by order of the Court, Mr. Wang will disclose Cere's confidential information and intellectual property to third parties, and will continue to have unauthorized and exclusive access to the Cere's Twitter and Telegram accounts.  No adequate remedy at law exists for the injuries alleged herein, and Cere will suffer great and irreparable injury if Mr. Wang's conduct is not immediately enjoined and restrained.

167.    Therefore, Cere seeks injunctive and preliminary injunctive relief enjoining (i) control and/or access to the wallets in Mr. Wang's personal control with the Diverted Funds (ii) using the username and/or passwords to continue to access and lock out Cere from the Twitter and Telegram accounts; and (iii) disclosing the username and/or passwords to third parties.

168.    Cere has no adequate remedy at law for the threatened injury.

## VII.    PRAYER FOR RELIEF

169.    Cere respectfully requests that this Court enter judgment in its favor and against Defendants Kenzi Wang and Does 1–10, and award the following relief:

170.    For injunctive relief enjoining, *inter alia*, continued access to and/or control of the wallets with the Diverted Funds, and the disclosure of Cere's trade secrets and the further unauthorized and exclusive access to Cere's Telegram and Twitter accounts.

171.    Mr. Wang, and all others holding by, through or under Mr. Wang, be required, jointly and severally, to:

      a.    Pay over to Cere all damages incurred by Cere by reason of Mr. Wang's acts in accordance with the laws of the State of California;

COMPLAINT FOR DAMAGES, INJUNCTIVE, AND DECLARATORY RELIEF

1    b.    Pay to Cere the costs of this action, together with reasonable attorneys'
2          fees and disbursements;
3    c.    Deliver to Cere all wallets with the Diverted Funds;
4    d.    Deliver to Cere all Cere online accounts;
5    172.  That the Court issue a judicial determination and declaration that:
6    a.    That Cere be granted general, special and incidental damages according to
7          proof at trial;
8    b.    That Cere be granted pre-judgment and post-judgment interest;
9    c.    That Cere be granted an exemplary and punitive damages award against
10         Defendants in an amount according to proof at trial; and
11   d.    Other relief this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Cere demands a trial by jury on each of its causes of action that are triable before a jury.

Dated: May 19, 2023                    **STEPTOE & JOHNSON LLP**

By:    */s/ Amanda Schwartz*
       Charles Michael, Esq.
       Galen Kast, Esq.
       Amanda Schwartz, Esq.

       Attorneys for Cere
       CEREBELLUM NETWORKS, INC.

COMPLAINT FOR DAMAGES, INJUNCTIVE, AND DECLARATORY RELIEF